## SCHWARZE v. CLARK et al.

No. 29737. Dec. 3, 1940.

*107 P. 2d 1018.*

Hall & Cotton, of Oklahoma City, for plaintiff in error.

Houston & Miskovsky, of Oklahoma City, for defendants in error.

DAVISON, J. Plaintiff in error is owner of the Schwarze Barber College located in Oklahoma City, Okla. He conducted the school under authority of a permit issued by the State Board of Barber Examiners, defendants in error. For purposes of clarity and convenience, plaintiff in error will hereinafter be referred to as "plaintiff" and defendants in error will be referred to as the "board."

An order revoking this permit was made on November 13, 1939, by the board on the grounds that the plaintiff was operating the barber school in violation of article 3, and sec. 12, art. 2, chap. 24, S. L. 1936-1937; and rule 8, adopted by the board for the purpose of governing the conduct of such a school or college.

In compliance with legislative enactment, the plaintiff appealed from the board's order of revocation to the district court of Oklahoma county, which affirmed the action of the board. That decision is now before this court for review.

To save time and avoid examination of witnesses in the trial court, it was stipulated and agreed that students in the school had been rendering barber work to the general public and charging therefor; that the prices charged were below the minimum scale fixed for such work in Oklahoma City by the State Board of Barber Examiners. Of the money received by the operator of the school, a part was retained and a portion returned

to the students performing the work, thereby benefiting both, directly and indirectly. It was this practice of charging for student work which led to revocation of plaintiff's permit.

Plaintiff contends that the rules and regulations established by the board are arbitrary and unreasonable and abridge section 2, art. 2; section 7, art. 2; and section 32, art. 2, of the Constitution of Oklahoma, as well as the 14th Amendment to the Constitution of the United States. Rule 8 is the only one specifically designated. It reads:

"Students shall not be allowed to charge compensation directly or indirectly for services rendered in any Barber School or College in the State of Oklahoma."

The power of the board to establish rules and regulations for barber schools and colleges is described in section 6, art. 3, chap. 24, S. L. 1936-1937, 59 Okla. St. Ann. § 88. This section reads in part:

"The Board of Barber Examiners shall have authority to adopt and enforce reasonable rules and regulations governing the conduct of such schools or colleges. * * *"

The same section empowers the board to withhold and revoke permits in the following words:

"The said board may refuse to issue such permit or may revoke a permit to operate such a school or college for failure to comply with any of the provisions of this act or the rules and regulations adopted by the Board pursuant thereto. * * *"

In determining whether the permit of plaintiff was wrongfully revoked, it is necessary to examine the laws which the board alleges were being violated. Section 1, art. 3, chap. 24, S. L. 1936-1937, 59 Okla. St. Ann. § 69, reads:

"Any person practicing the trade of barber or apprentice barber, without having at the time a valid unrevoked certificate, as provided in this act, or any person who, as owner, lessee, manager, or any other supervisory capacity, employs a person practicing the trade of barber or apprentice barber without such person having a valid, unrevoked certificate as a barber or apprentice barber, shall be deemed guilty of a misdemeanor. * * *" (Emphasis ours.)

Whether a person attending a barber college which charges for student work remains merely a student, unaffected by these regulations, or becomes one "practicing the trade of barber" is one of the primary issues. Barbering is defined by section 4334, O. S. 1931, 59 Okla. St. Ann. § 70, as follows:

"Any one or any combination of the following practices, when done upon the upper part of the human body for cosmetic purposes and when done for payment either directly or indirectly for the general public, constitutes the practice of barbering, to wit: Shaving or trimming the beard or cutting the hair. * * *" (Emphasis ours.)

In view of this statute, when a student performs any of the enumerated practices "for payment, either directly or indirectly," he is undertaking the practice of barbering and is subject to the laws relating to the barber profession which, among other things, forbid the practice of said profession without a certificate. Upon taking a panoramic view of the statutory provisions already considered, it is readily seen that rule 8 is supplementary to and in accord with Oklahoma statutes relating to the tonsorial profession. To hold the rule unreasonable would be to allow unlicensed students to perform services of the same kind, though perhaps not of as high a quality, as those of licensed barbers, without complying with statutory provisions governing such work. With such a rule, the compensated service of the student becomes amenable to the same regulations which apply to services of the licensed barber.

As a basis for revoking plaintiff's permit it was alleged that he was violating section 12, art. 2, chap. 24, S. L. 1936-1937, by charging less than the minimum price established for barber work. This section was upheld as constitutional in Herrin v. Arnold, 183 Okla. 392, 82 P. 2d 977; see, also, Jarvis v. State Board of Barber Examiners et al., 183 Okla.

527, 83 P. 2d 560; Vandervort v. Keen, 184 Okla. 121, 85 P. 2d 405.

Since by stipulation of the parties it is established that the students of the plaintiff's college have been employed under his supervision in the kind of work for which section 1, art. 3, chap. 24, supra, requires a certificate, he has thereby subjected himself to the operation of section 6 of said act, and the order complained of is in conformity with the law.

Plaintiff contends that rule 8 deprives the students of the gains of their industry and violates section 2, art. 2, of the Oklahoma Constitution. It was held by this court in Nation v. Chism, 154 Okla. 50, 6 P. 2d 766, that:

"The right to labor or earn one's livelihood in any legitimate field of industry or business is a right of property, and any unlawful or unreasonable interference with or abridgment of such right is an invasion thereof, and a restriction of the liberty of the citizen as guaranteed by the Constitution."

Regarding this holding, it was said in Herrin v. Arnold, supra:

"The foregoing statement is true, of course, as to any legitimate occupation, and it will be noted that the barrier is against any unlawful or unreasonable interference or abridgment of the right and not against any interference or abridgment of the right. * * *"

That statutes requiring persons engaged in barbering to possess a license or certificate are constitutional, and that the barber trade is subject to reasonable regulation is well settled. For authorities, see annotation in 20 A. L. R. 1111, which is supplemented by annotation in 98 A. L. R. 1089.

Plaintiff further contends that rule 8 tends to create a monopoly, thereby violating section 32, art. 2, of the Oklahoma Constitution. Pertaining to the true purpose of requisites which students must meet, it was said in People v. Logan, 284 Ill. 32, 119 N. E. 913:

"It is argued that the requirement of three years' service as an apprentice or study in a barber school has no direct relation to the public health or safety, but is rather intended to restrict and discourage the public from engaging in this occupation. The intention is to restrict the public from engaging in this occupation to the extent that only those may do so who have learned the trade; know how to prepare, use, and care for the tools; know what sanitary precautions must be taken to avoid the risk of spreading disease; and are acquainted with the sanitary regulations which the board of examiners is authorized by section 11 to adopt. * * *"

Two cases are principally relied upon by the plaintiff. Our attention is directed to the case of State ex rel. Mitchell, Atty. Gen., v. Thompson's School of Beauty Culture, Inc., et al. (Iowa) 285 N. W. 133. The issue in that case was whether or not a school of cosmetology that held itself out as charging for students' work was engaged in the practice of cosmetology contrary to law. The Iowa court held that to require students to work gratuitously would impose undue and unnecessary restrictions upon lawful occupations. However, there is a distinguishing factor to be noted between the Iowa and Oklahoma law. The Iowa Code, section 2585-b 12, defining barbering, specifically exempts apprentices studying under a licensed practitioner, and this was one of the controlling considerations in the Iowa adjudication cited. Another was that the same tribunal in Duncan v. City of Des Moines (Iowa) 268 N. W. 547, had held that an act fixing minimum prices for barbering services was unconstitutional. This court reached the opposite result with reference to the Oklahoma statute on the subject. For the foregoing reasons the Iowa decision is of very little persuasive value in this jurisdiction.

The plaintiff also relies upon, and gives much consideration to Moler v. Whisman (Mo.) 147 S. W. 985, wherein the Supreme Court of Missouri upheld the contention that to prohibit students or apprentices of barber colleges from charging for their services deprived the students of the gains of their own industry, as prohibited by the Missouri Constitution. In so doing, the court said that to prohibit students from charging would be to force them to labor without

pay; and to prohibit the college from charging would be to deprive the student of indirect remuneration, "thereby compelling the apprentice to *waste* two years of his time while qualifying for a public barber." (Emphasis ours.) This reasoning overlooks the paramount purpose for attending such schools, and *presupposes that a student attends school*, not for the purpose of acquiring knowledge, but for the sole and only purpose of pecuniary gain. Obviously, the statement made by the court is the result of a misapprehension of the true purpose and value of attending school. For these reasons, we are not impressed with Moler v. Whisman, supra, as sufficient basis for sustaining plaintiff's contentions.

Upon consideration of a statute providing that no barber school should charge any fee for work or service performed, other than regular charge for tuition, the Supreme Court of Rhode Island held that it was constitutional and did not deprive owners of barber schools of property. See State v. Conragan (R. I.) 171 Atl. 326. Therein it was said:

"* * * It is clear that the statute does not deprive them of their property by prohibiting them from charging customers for services rendered by their students. Students in a school are prohibited from barbering for compensation. The proprietor of a barber school has no more right to receive compensation for the service performed by a student than has the student. The statutory provision to which objection is made is reasonable and is necessary to insure to the public protection from untrained and unauthorized barbers."

In their reply brief, plaintiff's counsel attempts to show that the above-cited case is inapplicable to the present situation. They point to the fact that the school in Rhode Island solicited patronage of the public by signs and devices; that the school was held out as rendering the same services, at less price, than could be obtained in licensed barber shops, resulting in the school becoming "a subterfuge for a cut-rate barber shop." This court discounts these alleged

distinguishing factors between the two schools. Whether or not the school advertises, if the students or operators are allowed to charge for their services, regardless of the name given the business, the result is the same.

It is therefore the decision of this court that the Board of Barber Examiners acted within constitutional and statutory limitations in revoking the permit of the plaintiff.

BAYLESS, C. J., and RILEY, OSBORN, GIBSON, and HURST, JJ., concur. WELCH, V. C. J., and CORN and NEFF, JJ., absent.