**William R. BALLOU et al., Plaintiffs, Appellants,**

v.

**GENERAL ELECTRIC COMPANY, Defendant, Appellee.**

**No. 7602.**

United States Court of Appeals, First Circuit.

Oct. 16, 1970.

John McMahon, Roxbury, Mass., with whom Angoff, Goldman, Manning & Pyle, Boston, Mass., was on the brief, for appellants.

Laurence S. Fordham, Boston, Mass., with whom David W. Walker and Foley, Hoag & Eliot, Boston, Mass., were on the brief, for appellee.

Before ALDRICH, Chief Judge, McENTEE and COFFIN, Circuit Judges.

COFFIN, Circuit Judge.

Appellants are apprentices in a program run by appellee, General Electric Company. This program consists of on-the-job training conducted at appellee's plant in Lynn, Massachusetts, and additional classes conducted off appellee's premises by independent educational institutions. Although appellee pays the apprentices' tuition for this outside classwork, it pays them nothing for the time spent in class or preparing for class. Appellants are required by their employment contracts to prepare for, attend, and make satisfactory progress in these classes. An apprentice who fails to keep these conditions is subject to dismissal. For the most part, the classwork does not relate directly to the skills apprentices receive in on-the-job training. Its approach is more theoretical, providing the apprentices with an academic understanding of the skills they are developing.

Appellants claim that the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* entitles them to compensation for the time spent in and preparing for class. They filed suit in the district court for back pay. The court dismissed their complaint as failing to state a cause of action. It held that the classroom activity was "preliminary or postliminary to * * * principal activity or activities", and thus was exempt from coverage of the Fair Labor Standards Act under the Portal-to-Portal Act, 29 U.S.C. § 254(a). Although we expressed some skepticism as to whether appellants were entitled to compensation for this classwork, we nevertheless reversed the district court's dismissal because the record was too barren for us to decide the issue. Ballou v. General Electric Co., 393 F.2d 398 (1st Cir. 1968). On remand, interrogatories were filed and partially answered. Appellee moved for summary judgment and both sides filed affidavits. The court granted the motion, ruling that appellants' classroom activities were preliminary or postliminary to appellants' principal activity—work-training.

In so ruling, the court utilized the test set down by the Supreme Court in the companion cases of Steiner v. Mitchell, 350 U.S. 247, 76 S.Ct. 330, 100 L.Ed. 267 (1956) and Mitchell v. King Packing Co., 350 U.S. 260, 76 S.Ct. 337, 100 L.Ed. 282 (1956). The Court there held that activities are not "preliminary or postliminary" if they are "an integral and indispensable part of the principal activities for which covered workers are employed * * *." 350 U.S. at 256, 76 S.Ct. at 335. Appellants claim that the district court erred by ruling that the time apprentices spend preparing for and

attending class was not an "integral and indispensable part" of their principal activity of employment.

Initially we are confronted with appellants' claim that summary judgment is not an appropriate method for deciding this issue both because the issues are complex and because the records relating to the apprentice program are in G.E.'s control. Appellants do not say what they would find if they had access to appellee's records. All have participated in the apprentice program and have firsthand knowledge of its operations. They offer no reason why the discovery in which they engaged did not uncover the information supposedly contained in the records. Nor do they offer any reason why they could not have discovered these records if they had felt them so important.

■ Though it may be complex, the issue whether or not the classroom program was an "integral and indispensable part" of appellants' principal activity is not, as appellants suggest, a factual one. It is a question of law. In both *Steiner* and *King Packing, supra,* the Supreme Court determined whether the disputed activities were preliminary or postliminary; the issue was not one of factual inferences to be decided by a jury.[1]

■ Having determined that summary judgment was appropriate, we turn to the substantive question of compensability for classroom study. Appellants argue that a compulsory program must be an "integral and indispensable part" of their principal activity or else it would not be compulsory. At first glance, this contention seems to have some merit. The apprentices were hired both to work and to engage in training so that they could become more useful employees. If an apprentice failed in either his capacity as worker or trainee, he would be fired. Even though it is undisputed that G.E. could have carried on its training pro-

gram without classroom activity, it did not choose to do so. Classroom training seems to be an essential part of the training program G.E. has decided to set up and is to be distinguished from activities allowed for the employees' convenience, such as the post-work showers in Mitchell v. Southeastern Carbon Paper Co., 228 F.2d 934 (5th Cir. 1955).

■ We are nevertheless satisfied that Congress did not intend the Fair Labor Standards Act to apply to these activities and that in fact it does not apply. In Walling v. Portland Terminal Co., 330 U. S. 148, 67 S.Ct. 639, 91 L.Ed. 809 (1947) and Walling v. Nashville, Chattanooga & St. Louis Railway, 330 U.S. 158, 67 S.Ct. 644, 91 L.Ed. 816 (1947), both litigated before the Portal-to-Portal Act was enacted, the Supreme Court held that employers who furnished training to potential employees, were not required under the Fair Labor Standards Act to compensate trainees for time spent in the training program.[2] Even though the trainees were hired if they successfully completed the program, the Court did not deem them employees but compared their status to that of students. To justify excluding persons whose status was that of a student from the coverage of the law, the Court noted that 29 U.S.C. § 214 permitted employers to pay less than minimum wages to learners and apprentices providing that the Administrator of the Wage and Hour Division of the Department of Labor approved. The justification for this provision was and is that apprentices are entitled to be compensated at the minimum wage for the productive work content of their activities but not for the educational or training content which was for their own benefit. Administrative approval of wages less than the minimum is necessary only to prevent employers from paying less than the minimum wage to "apprentices" who were not actually receiving any training.

---

1. *See also* Witrz v. Marino, 405 F.2d 938 (1st Cir. 1968); Mitchell v. Southeastern Carbon Paper Co., 228 F.2d 934 (5th Cir. 1955).

2. The training was not work-training. The trainees performed no work for the company until they successfully completed the training program.

According to these Supreme Court decisions, if G.E. did not employ appellants as workers but provided only training programs which they were required to complete successfully before they could be employed as journeymen, appellants would be entitled to no compensation. The fact that in addition to such a program, G.E. also provides work-training for which it pays well above the minimum wage would not seem to be sufficient to require that the minimum wage be paid for the outside classroom study.[3] G.E. compensates its apprentices in their status as workers but does not compensate them in their status as students.

Although the Portal-to-Portal Act was not law when the Supreme Court decided *Portland Terminal* and its companion *supra*, it would not seem to require that the apprentices be compensated in their student status. The legislative history of that Act reveals that it was designed to limit rather than expand the coverage of the Fair Labor Standards Act.[4] We think that it is consistent with the spirit of both the Portal-to-Portal Act and the Fair Labor Standards Act to say that ,as a matter of law, the principal activity of the apprentices as employees is the work that takes place during their regular 40 hour work-training week and that activity as students pursuing their required courses of study is neither integral nor indispensable to that principal activity.

■ Our holding is bolstered by the Department of Labor Regulation, 29 C. F.R. § 785.32, which states that employers do not have to pay apprentices for supplemental training programs if the training programs substantially comply with the fundamental standards of the Bureau of Apprenticeship and Training. There is no material issue of fact as to whether or not G.E.'s program does substantially comply.[5] Appellants make no attempt to argue that G.E. does not comply with 11 of the 12 standards set forth in publications of the Bureau of Apprenticeship and Training. They claim there is an issue of fact as to whether there is compliance with the requirement of employee-employer cooperation on the basis of an affidavit which indicates that the union would like to have more influence over some aspects of the apprenticeship program. To the extent that, if proved, a latent union-management dispute over a part of the program would cast doubt on the existence of complete employee-employer cooperation, we find that doubt is not suf-

---

3. G.E. might be able to pay less than minimum wages for the work-training aspect of its program if it obtained approval from the Administrator of the Wage and Hour Division under 29 U.S.C. § 214. If G.E. in fact did obtain approval, it might compensate for both the classroom activity and the work-training but at a rate far enough below the minimum wage so that the apprentices would earn less than they do now.

4. *See* H.R.Rep.No.71, Portal-to-Portal Act of 1947, Feb. 25, 1947 in 1947 U.S.Code Congressional Service, p. 1029.

5. Appellants claim that the fundamental standards of the Bureau of Apprenticeship and Training are not those contained in publications of that Bureau but are the requirements with which apprenticeship programs must comply before the Administrator of the Wage and Hour Division will approve a program that pays less than the minimum wage. These requirements are set forth at 29 C.F.R. § 522.1 *et seq.*

It seems obvious to us that there are two different sets of standards. Quite understandably, the standards for employers paying less than the minimum wage would be stricter than the fundamental standards. Appellants base their entire argument on an ambiguous statement published in the Federal Register over 15 years ago to the effect that the standards of 29 C.F.R. § 522.1 *et seq.* have been adopted by the Bureau of Apprenticeship. The fact that these standards were adopted does not mean that they are the fundamental standards to which § 785.32 refers; it means rather that they were adopted for precisely what they were: the standards for programs that pay less than the minimum wage. While conceivably there might exist a factual question whether G.E.'s program substantially complied with standards governing programs paying less than the minimum wage, there is none as to substantial compliance of the program with the standards relevant to it. *See* n. 6, *infra.*

ficient to show that a *substantial* compliance has not been obtained.[6]

■■ We note that the Wage and Hour Administrator has specifically approved G.E.'s Lynn program as not requiring compensation for time spent pursuing classroom studies. Opinion Letter No. 996, 2 CCH Labor L.Rptr., Wages-Hours ¶ 30,998.22. Admittedly, that letter was based on 29 C.F.R. § 785.31 which seems to concern voluntary programs, but as appellee indicates, voluntary programs are only an example of the application of that regulation.[7] This determination by the Department of Labor, which has special competence in this area of the law, is entitled to considerable weight in this court.[8]

■ Finally, we must consider appellants' contentions that even if the classroom activities are preliminary or postliminary and thus exempted from the coverage of the Fair Labor Standards Act by 29 U.S.C. § 254(a), they must still be compensated under 29 U.S.C. § 254(b). The latter subsection provides that even if an activity is preliminary or postliminary, it is still compensable if there is a custom or practice of paying employees for their time spent on the activity but only if payment is "not inconsistent with a written or nonwritten contract" between the employee and the employer.

G.E. apprentice contracts contain the following provision:

> "The apprentice shall not be paid for attendance time at classroom exercises or lecture courses held outside of regular working hours."

Thus, even if we were to accept appellants' argument that the small bonus, granted to trainees when they successfully completed the program, was customary compensation within the meaning of the Act, they would still not be entitled to compensation because their contracts are inconsistent with that custom.

Affirmed.

---

6. Appellants' contention concerning employee-employer cooperation is bootstrapped from their confusion over which of two sets of standards are those referred to in 29 C.F.R. § 785.32. *See* n. 5, *supra*. Whereas the fundamental standards require employee-employer cooperation, the standards set forth in 29 C.F.R. § 522.1 *et seq.* require joint agreement between the employer and the bona fide bargaining agent. 29 C.F.R. § 521.3(F). Appellants attempt to incorporate this latter standard into the former in order to create a factual issue, but the fundamental standard speaks of cooperation, not agreement, and with employees, not bargaining units. G.E.'s affidavits establish that cooperation, if not agreement, exists.

7. We see no merit in appellants' contention that we must exclude this letter because it was addressed to G.E.'s attorney, a former member of the Department of Labor. The regulation on which appellants rely concerns former employees practicing before the Department in connection with cases or administrative proceedings that were pending before their old section of the Department during their time of employment. Informal inquiries at the time of the attorney's employment do not constitute a pending case or proceeding. Furthermore, the informal inquiries were addressed to a different bureau than the one to which appellee's attorney was attached.

8. L. Gillarde Co. v. Joseph Martinelli & Co., 169 F.2d 60 (1st Cir. 1948), cert. denied, 335 U.S. 885, 69 S.Ct. 237, 93 L.Ed. 424 (1948); Roland Electric Co. v. Walling, 326 U.S. 657, 676, 66 S.Ct. 413, 90 L.Ed. 383 (1946); United States v. Correll, 389 U.S. 299, 88 S.Ct. 445, 19 L.Ed. 2d 537 (1967).