Raymond J. NICHOLS, et al., Plaintiffs,

v.

CITY OF CHICAGO, Defendant.

No. 89 C 3526.

United States District Court,
N.D. Illinois, E.D.

April 21, 1992.

Patricia A. Collins, Stephen J. Feinberg, Marvin Gittler, Asher, Gittler, Greenfield, Cohen & D'Alba, Chicago, Ill., for plaintiffs.

Kelly R. Welsh, Mary L. Smith, Susan R. Lichtenstein, Jennifer J. Ranger, Eileen L. Bell, City of Chicago, Law Dept., Corp. Counsel, Mary Lane Mikva, Stephen G. Seliger, Ltd., Chicago, Ill., for defendant.

## MEMORANDUM OPINION AND ORDER

ALESIA, District Judge.

This is an action under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 207 *et seq.* Plaintiffs are police officers who are canine handlers for the City of Chicago. Plaintiffs are required to board their dogs at their homes and feed, exercise and groom the dogs during their off-duty hours. Plaintiffs claim that the time spent in these activities is compensable under the FLSA. The City of Chicago ("City"), defendant in this action, has moved for summary judgment arguing the plaintiffs' home dog-care activities are specifically excluded from compensation under the FLSA by the Portal to Portal Amendment.[1] For the reasons set forth below, the City's motion is denied.

### I. FACTS

The parties do not dispute the relevant facts of this case. Plaintiffs all volunteered for canine patrol duty with the City of Chicago Police Department ("CPD"). Upon completing training with their designated canine, plaintiffs are assigned to various canine patrol units with the CPD or are detailed to several federal agencies.[2] Generally, plaintiffs work eight to eight and one-half hour shifts. One to two hours per shift are not spent on canine patrol activities but are allotted for travel time to and from plaintiffs' homes. Stipulation of Uncontested Facts, ¶¶ 17, 24, 34, 39, 46–47. At the end of the work shift, plaintiffs are required to take their assigned police dogs home. City's Rule 12(m) Statement, ¶ 5.[3] The City does not provide a central kennel for its police dogs. The City does provide a kennel to be used at the police officers' home, dog food and veterinary care. Stipulation of Uncontested Facts, ¶ 12. The City provides various instruction manuals regarding home dog

---

1. The Portal to Portal Amendment to the FLSA is codified at 29 U.S.C. § 254. For brevity purposes, we will refer to the Portal to Portal Amendment as the Portal Amendment.

2. An example of this is one plaintiff is assigned to the Federal Aviation Administration for explosive detection duty at O'Hare International Airport.

3. Both parties have complied with local rule and filed statements of contested and uncontested facts. *See* Rule 12 of the General Rules of the United States District Court, Northern District of Illinois. For brevity purposes, we will cite to these statements as City's Rule 12(m) Statement or Plaintiffs' Rule 12(n) Statement.

care.[4] The City's instruction manuals dictate how the canine patrol officers should regularly brush and groom the police dog, check the police dogs for parasites, clean the police dog's kennel and care for any injury the police dog may sustain. Plaintiffs contend that the off-duty dog-care activities they are required to perform are activities for which they must be compensated, under the FLSA, either at regular or overtime pay rates. The City disagrees stating the off-duty home dog-care activities are excluded from FLSA coverage by the Portal Amendment.

## I. DISCUSSION

### A. Standard of Review

A motion for summary judgment must be granted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED.R.CIV.P. 56(c). A party opposing a motion for summary judgment must set forth specific facts showing that there is a genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986); *Schroeder v. Lufthansa German Airlines*, 875 F.2d 613, 620 (7th Cir.1989). A genuine issue of material fact exists only where there is sufficient evidence favoring the non-moving party to support a jury verdict

for that party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–50, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986). All reasonable factual inferences must be viewed in favor of the non-moving party. *Holland v. Jefferson Nat'l. Life Ins. Co.*, 883 F.2d 1307, 1312 (7th Cir.1989). If the evidence presented by the non-movant is merely colorable or is not sufficiently probative, summary judgment is appropriate. *Wolf v. Fitchburg*, 870 F.2d 1327, 1330 (7th Cir.1989). With this standard in mind, we consider the City's motion drawing all reasonable factual inferences in the plaintiffs' favor.

### B. Compensation under the Fair Labor Standards Act

Section 7(a)(1)[5] of the FLSA states, in relevant part:

> Except as otherwise provided in this section, no employer shall employ any of his employees ... for a work week longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed.

Section 7(k) of the FLSA partially exempts employees engaged in law enforcement[6] from the requirements of section 7(a) because police officers generally work in shifts or tours.[7] Under section 7(a)(1), an

---

4. Plaintiffs' Proposed Trial Exhibit # 15, entitled "A Compilation of Material for the Information of Members of the Department Interested in Canine Patrol", and Plaintiffs' Proposed Trial Exhibit # 16, entitled "Information on Care and Feeding of the Dog", which are contained in the Final Pretrial Order, are distributed to new canine handlers and are the policies used by the City when instructing new canine handlers. *See* Plaintiffs' 12(n) Statement, Exhibit F, Affidavit of Jerome Pluta.

5. 29 U.S.C. § 207(a)(1).

6. Law enforcement activities are defined by the Department of Labor as "any employee (1) who is uniformed or plainclothed member of a body of officers and subordinates who are empowered by State statute or local ordinance to enforce laws designed to maintain public peace and order and to protect both life and property

from accidental or willful injury, and to prevent and detect crimes...." 29 C.F.R. § 553.211(a).

7. Section 7(k) states:

> No public agency shall be deemed to have violated subsection (a) of this section with respect to the employment of any employee in fire protection activities or any employee in law enforcement activities ... if
> (1) in a work period of 28 consecutive days the employee receives for tours of duty which in the aggregate exceed the lesser of (A) 216 hours, or (B) the average number of hours (as determined by the Secretary pursuant to section 6(c)(3) of the Fair Labor Standards Amendments of 1974) in tours of duty of employees engaged in such activities in work periods of 28 consecutive days in calendar year 1975; or
> (2) in the case of such an employee to whom a work period of at least 7 but less than

employee must work 160 hours per 28 day period (or 40 hours in a workweek) before the employer must pay overtime. A law enforcement employee must work 171 hours per 28 day period (or 42 and ¾ hours in a workweek) before the public agency must pay overtime. 29 C.F.R. § 553.230; *Spires v. Ben Hill County,* 745 F.Supp. 690, 697 n. 11 (M.D.Ga.1990). The parties agree that the claim before this court is not that they have not been paid appropriately and completely for time they spend during their tour of duty and for all overtime unrelated to dog care. Plaintiffs' 12(n) Statement, at ¶ 22, 29; City's 12(m) Statement, at ¶ 6.

The Portal Amendment was enacted to close a loop-hole in the FLSA. Following the enacting of the FLSA, a flood of lawsuits were filed by employees against their employers seeking compensation for time spent travelling to and from their places of employment (so-called portal-to-portal activities). The Portal Amendment, as adopted by Congress, virtually wiped out all portal-to-portal claims existing at that time. *See* 29 U.S.C. § 252 (claims prior to May 14, 1947 eliminated unless activity was compensable by contract, custom, or practice).

Section 4 of the Portal Amendment, which controls all claims after May 14, 1947, excluded from FLSA coverage (and thus made noncompensable):

a) walking, riding or traveling to and from the actual place of performance of the principal activity, or activities which such employee is employed to perform, and

b) activities which are preliminary to or postliminary to said principal activity or activities, which occur either prior to the time or any particular workday at which such employee commences, or subsequent to the time on any particular workday at which he ceases, such principal activity or activities.

Thus, activities found to be preliminary or postliminary to an employee's principal activity are explicitly made noncompensable under the FLSA by section 4(b) of the Portal Amendment. The City contends that the plaintiffs' home dog-care activities in this case are preliminary or postliminary to the plaintiffs' principal activities as canine patrol police officers. Thus, the City concludes that the plaintiffs' home dog-care activities are excluded from FLSA coverage. The plaintiffs contend that their off-duty home dog-care activities are integrally related to their principal activities so as to be considered a part of the plaintiffs' principal activities. The plaintiffs' argument tracks the Supreme Court's decision in *Steiner v. Mitchell,* 350 U.S. 247, 76 S.Ct. 330, 100 L.Ed. 267 (1956), where the Court stated that "activities performed either before or after the regular work shift, on or off the production line, are compensable under the portal-to-portal provisions of the [FLSA] if those activities are an integral and indispensable part of the principal activities for which covered workmen are employed and are not specifically excluded by Section 4(a)(1)." *Steiner,* 350 U.S. at 256, 76 S.Ct. at 335.

 Having reviewed the City's motion for summary judgment, the plaintiffs' response and the parties' affidavits and exhibits, the court concludes that the City is not entitled to summary judgment. Whether an activity is preliminary or postliminary to a principal activity is a question of fact. *See Blum v. Great Lakes Carbon Corp.,* 418 F.2d 283, 286 (5th Cir.), *cert. denied,* 397 U.S. 1040, 90 S.Ct. 1361, 25 L.Ed.2d 651 (1969) (question of fact); *Mitchell v. Southeastern Carbon Paper Co.,* 228 F.2d 934, 938–39 (5th Cir.1955) (same); *Carter v. Panama Canal Co.,* 314 F.Supp. 386, 391 (D.D.C.1970), *affirmed,* 463 F.2d 1289 (D.C.Cir.1972), *cert. denied,* 409 U.S. 1012, 93 S.Ct. 441, 34 L.Ed.2d 306

---

28 days applies, in his work period the employee receives for tours of duty which in the aggregate exceeded a number of hours which bears the same ratio to the number of consecutive days in his work period as 216 hours (or if lower, the number of hours referred to in clause (B) of paragraph (1)) bears to 28 days,

compensation at a rate not less than one and one-half times the regular rate at which he is employed.
29 U.S.C. § 207(k).

(1972) (same). *But see Ballou v. General Electric Co.*, 433 F.2d 109, 111 (1st Cir. 1970), *cert. denied*, 401 U.S. 1009, 91 S.Ct. 1253, 28 L.Ed.2d 545 (1971) (question of law).[8] The court will not enter summary judgment when the principal issue disputed by the parties is a question of fact.[9] Even if the parties did not dispute the factual basis of this issue, however, the court concludes that the relevant law does not support the City's position.

In *Dunlop v. City Elec., Inc.*, 527 F.2d 394 (5th Cir.1976), the Fifth Circuit determined that the test to determine whether an activity is integrally related to an employee's principal activity is whether the activity is performed regularly by the employees within the course of the employer's business. *Dunlop*, 527 F.2d at 401. The *Dunlop* court stated that it was determinative that the activity is "necessary to the business and is performed by the employees, primarily for the benefit of the employer." *Dunlop*, 527 F.2d at 400–01; *Cf. Blum*, 418 F.2d at 287 (employee practice of relieving out-going shift 30 minutes early not compensable under Portal Amendment because no benefit inured to employer from practice); *Jackson v. Air Reduction Co.*, 402 F.2d 521, 523 (6th Cir.1968) (same). The *Dunlop* court found that the pre-shift activities of electricians, such as the filling out of time and material sheets and fueling, loading and cleaning of trucks were not exempted by the Portal Amendment. The court determined that these activities were "within the range of principal activities covered by the act and were performed at the behest and for the benefit of the employer." *Dunlop*, 527 F.2d at 401. The court also found significant the fact that the employees would have been compensated for these activities had the activities been performed during the employee's regular work shift. *Dunlop*, 527 F.2d at 401.

Applying *Dunlop* to the facts of the instant case, the court finds it at least arguable that the plaintiffs' off-duty home dog-care activities are integral and indispensable to the plaintiffs' principal activities as canine patrol police officers. First, plaintiffs' off-duty home dog-care activities are necessary to the plaintiffs' principal activities of canine patrol. It is not disputed that in order for the canine patrol officer to properly perform his or her principal activity of canine patrol, the canine portion of the work team must be in proper working order. Thus, the plaintiffs' off-duty activities of feeding, grooming and tending to injured police dogs is necessary to plaintiffs' on-duty activities of canine patrol. Second, the plaintiffs perform their off-duty dog-care activities at the behest and for the benefit of the City. The plaintiffs follow the City's explicit written instructions when caring for their police dogs. Moreover, the plaintiffs efforts at keeping the police dogs well-fed and free of disability are clearly for the benefit of the City, which owns the police dogs. Last, and perhaps most significant, the City compensates the plaintiffs for dog-care activities performed by the plaintiffs while on-duty. The dog-care activities are identical no matter when or where performed. That the City chooses to compensate the canine patrol officers for dog-care activities while on-duty leads the court to conclude that the activities are integral to the officers' work as canine police officers.

Recently, a district court was presented with an issue identical to that presented here, on facts remarkably similar to those presented by the parties in this case. In *Truslow v. Spotsylvania County Sheriff*, 783 F.Supp. 274 (E.D.Va.1992), a deputy sheriff in a canine unit sued under the FLSA for his home dog-care activities. The deputy sheriff's duties included cleaning, feeding, exercising and otherwise caring for his dog, mostly while off-duty.

---

**8.** Curiously, the *Ballou* court cited the *Southeastern Carbon Paper* decision in support of its holding that the issue is a question of law. *Ballou*, 433 F.2d at 111 n. 1. The *Southeastern Carbon Paper* court clearly held the opposite. *Southeastern Carbon Paper*, 228 F.2d at 938–39.

**9.** That the Supreme Court has described this issue in *dicta* as a complex question of law and fact does not reduce the court's reluctance to enter summary judgment. *See Barrentine v. Arkansas–Best Freight System, Inc.*, 450 U.S. 728, 743, 101 S.Ct. 1437, 1446, 67 L.Ed.2d 641 (1981).

*Truslow*, 783 F.Supp. at 276. The district court found it was uncontroverted that the deputy sheriff would have been terminated by his employer if he had not maintained the dog in proper fashion. *Truslow*, 783 F.Supp. at 276. The district court granted the deputy sheriff's summary judgment motion, holding as a matter of law that "off-duty time expended in the care, training, and required demonstration of a canine unit dog constitutes compensable hours worked under the FLSA." *Truslow*, 783 F.Supp. at 277. The *Truslow* court did not find dispositive the fact the employee's activity occurred at home. *Truslow*, 783 F.Supp. at 278. The district court stated: "The employer bears the burden of preventing overtime work when such work is not desired." *Truslow*, 783 F.Supp. at 278–79 (citing 29 C.F.R. § 785.13 ("In all cases it is the duty of the management to exercise its control and see that the work is not performed if it does not want it to be performed. It cannot sit back and accept the benefits without compensating for them.")).

The court agrees with the analysis of *Truslow*. Moreover, the similarity between the facts in *Truslow* and the instant facts dictates a similar result. All of the police officers in this case stand in the same position as the *Truslow* plaintiff in that they have no alternative but to board their police dogs at their homes. Both the *Truslow* plaintiff and the instant plaintiffs perform much of their dog-care activities while off-duty and at home. The district court in *Truslow* concluded:

> That Truslow may have received some incidental benefit from the companionship of the dogs as "pets" is insufficient, on the facts of this case, to render the activities exempt as preliminary or postliminary activities under the Portal–to–Portal Amendment. As an integral and indispensable part of the principal activities of a canine deputy, off-duty time spent caring for canine unit dogs must be compensated as hours worked in accordance with the rules established by the FLSA. Accordingly, summary judgment *on the issue of liability* ... must be granted in favor of the plaintiff.

*Truslow*, 783 F.Supp. at 279 (emphasis added). While the *Truslow* court's decision is not binding on this court, the court finds the analysis highly persuasive. *Truslow* supports this court's determination that summary judgment for the City must be denied.

## C. The City's Position

■ The City makes several arguments in support of its motion for summary judgment. We have considered each of the City's arguments and reject them all. We discuss several of these arguments below. First, the City argues that the lack of control it has over the amount of home dog-care activities that a canine patrol officer provides renders the officers' activities non-principal, and thus, noncompensable under the FLSA. The City is correct in stating that the employer's control over its employees' postliminary or preliminary activities can be a factor in determining whether activities are compensable under the FLSA. *See Leone v. Mobil Oil Corp.*, 523 F.2d 1153, 1163 (D.C.Cir.1975). Clearly, the City exerts a large measure of control over the canine patrol officers' off-duty home dog-care activities. The City's explicit instructions regarding home dog care displays the City's control over the canine patrol officers in that the officers were required to follow the instructions and expected to maintain the dogs in good health and appearance at all times.

■ The City's concern about control over the *amount* of time spent in home dog-care activities relates more to the accounting aspect of the hours for which the City may have to compensate the handlers. City's Memorandum in Support of Summary Judgment, at 6 ("City's Memorandum"). In an FLSA suit, there is a shifting burden of proof regarding an employee's hours alleged to have been uncompensated in violation of the statute. Plaintiffs have the initial burden of proving that they have performed work for which the City has not provided proper compensation. Plaintiffs must produce evidence at trial from which the amount and extent of the uncompensated work may be reasonably inferred. The

burden then shifts to the City to produce evidence that either shows the precise amount of work performed by plaintiffs or negates the reasonableness of the inference to be drawn from the plaintiffs' evidence. *Cf. Dole v. Bishop,* 740 F.Supp. 1221, 1226 (S.D.Miss.1990) (citing *Anderson v. Mt. Clemens Pottery Co.,* 328 U.S. 680, 687–88, 66 S.Ct. 1187, 1192–93, 90 L.Ed. 1515 (1946); *Reeves v. International Tel. & Tel. Corp.,* 616 F.2d 1342, 1351 (5th Cir.1980), *cert. denied,* 449 U.S. 1077, 101 S.Ct. 857, 66 L.Ed.2d 800 (1981)). Thus, should the plaintiffs meet their burden in this case, the City will be entitled to introduce evidence which might negate any inference raised by the plaintiffs of the reasonableness of the amount of time plaintiffs spent on off-duty home dog-care activities.

■ Next, the City contends that the location of the dog-care activities (the canine patrol officers' homes) makes the activities preliminary and postliminary. City's Memorandum, at 5–6. The City points out that specific language of the Portal Amendment acknowledges " 'an actual place of performance of the principal activities.' " City's Reply Memorandum in Support of Summary Judgment, at 8 (hereinafter "City's Reply Memorandum") (quoting 29 U.S.C. § 254(a)(1)). The City argues that because the canine patrol officer's home is not the place of performance of the officer's principal activity, the home dog care is excluded from compensation under the Portal Amendment.

The City fails to recognize the interpretation given to the term "principal activity" by both the Secretary of the Department of Labor and by the courts. The term "principal activity" in the Portal Amendment has been recognized as referring to all activities which are an integral part of a principal activity, regardless of where the activities took place. *See* 29 C.F.R. § 790.8(b) (preliminary and postliminary activities may under other conditions be considered principal activities);[10] *Steiner,* 350 U.S. at

256, 76 S.Ct. at 335 (activities performed before or after regular work shift, on or off the production line are compensable). The plaintiffs' homes may be an actual place of performance if the activities performed at the plaintiffs' homes are integral to the plaintiffs' principal activities. The language of the Portal Amendment does not require otherwise.

■ The City claims next that the voluntary nature of the plaintiffs choosing to work as canine handlers bars their claim under the Portal Amendment. City's Memorandum, at 6–7. The City argues that because the plaintiffs volunteered to become dog handlers, the home dog care that is required is supplementary to the plaintiffs' principal work as police officers. The City's argument overlooks § 3(e)(4)(A) of the FLSA. 29 U.S.C. § 203(e)(4)(A). Section 3(e)(4)(A) provides:

> The term "employee" does not include any individual who volunteers to perform services for a public agency if
>
> (i) the individual receives no compensation ...; and
>
> (ii) such services are not the same type of services which the individual is employed to perform for such public agency.

The canine patrol officers in this case fit the statutory definition of employee, and thus, are not volunteers. First, the canine patrol officers are compensated employees. Second, the canine patrol officers are employed by the City to care for their dogs while on-duty, as well as off-duty. The City does not provide a central kennel should the canine patrol officers not wish to maintain the dogs at the officers' homes. *See also* 29 C.F.R. § 553.01(d) (federal regulations provide that an employee "shall not be considered a volunteer if ... otherwise employed by the same public agency to perform the same types of services for which the individual propose to volunteer."); *Truslow,* 783 F.Supp. at 278 ("the crucial question is not whether the work was voluntary, but rather whether

**10.** Part 790 of the Code of Federal Regulations contains the Department of Labor's "General Statement as to the Effect of the Portal-to-Portal Act of 1947 on the Fair Labor Standards Act of 1938."

the plaintiff was in fact performing services for the benefit of the employer with the knowledge and approval of the employer") (citing *Steiner*, 350 U.S. at 251, 76 S.Ct. at 333).

In support of its argument, the City cites *Ballou v. General Electric Co.*, 433 F.2d 109 (1st Cir.1970) for the proposition that time spent by apprentices in required classes is excluded by the Portal Amendment because the time is supplemental to the principal work of an apprentice. City's Reply Memorandum, at 11. The facts of *Ballou* distinguish it from the instant case. *Ballou* involved an apprenticeship program that contained course work which the court determined was not an integral or indispensable part of the principal activities of the apprentices. Our case does not present a question of whether apprenticeship program course work is compensable under the FLSA. Moreover, Department of Labor ("DOL") Regulations, codified at 29 C.F.R. § 785.32, specifically exclude apprenticeship programs from coverage under the FLSA. Because no apprenticeship program is involved in this case, neither the holding in *Ballou* nor 29 C.F.R. § 785.32 applies.[11]

■ The City's conclusion that home dog care is not compensable because it is not an integral part of the plaintiffs' job as police officers is erroneous. Such a conclusion ignores the fact that, once the canine patrol officers in this case are assigned to work with dogs as their principal employment activity, they board the dogs at their homes and care for the dogs while off-duty. Stipulation of Uncontested Facts, at ¶¶ 29, 49. The fact that the plaintiffs can transfer from the canine patrol at any time does not relieve the City employer from liability under the FLSA while the plaintiffs are serving as dog handlers. Any other interpretation of the FLSA would undermine the stated purposes of the act: all principal activities performed by the employee which benefit the employer must be compensated.

■ Next, the City argues that the plaintiffs must seek compensation for off-duty dog-care activities during the ongoing negotiation process of the collective bargaining agreement ("CBA"). The City's argument rests upon the assumption that the home dog care provided by the canine patrol officers would be found by this court to be postliminary or preliminary activities. If an activity is postliminary or preliminary under the FLSA, the employer can agree to compensate such activities by an express provision of a written or non-written contract or by custom or practice. *See* 29 U.S.C. § 254(b). Nevertheless, the City's argument fails because the home dog-care activities are not preliminary or postliminary, and may well be integral and indispensable to the canine patrol officers' principal activities.

■ Moreover, the Supreme Court has explicitly stated that employees' rights under the FLSA take precedence over conflicting provisions in a collective bargaining agreement. In *Barrentine v. Arkansas Freight System*, the Court stated:

> This Court's decisions interpreting the FLSA have frequently emphasized the nonwaivable nature of an individual employee's right to a minimum wage and to overtime pay under the Act. Thus, we have held that FLSA rights cannot be abridged by contract or otherwise waived because this would "nullify the purposes" of the statute and thwart the legislative policies it was designed to effectuate.

*Barrentine v. Arkansas–Best Freight System, Inc.*, 450 U.S. 728, 740, 101 S.Ct. 1437, 1444–45, 67 L.Ed.2d 641 (1981). The *Barrentine* Court held that a plaintiff who was seeking compensation for pre-shift activities did not relinquish his statutory rights under the FLSA simply because, initially (and unsuccessfully), the plaintiff pursued a grievance procedure under the collective bargaining agreement. *Barrentine*, 450 U.S. at 734–735, 101 S.Ct. at 1441–42. The Court reasoned that a worker's rights un-

---

11. The City has not cited to a specific regulation which would exclude an activity analogous to dog care from coverage under the FLSA. How-

ever, several DOL opinion letters have examined off-duty dog-care activities by police officers. The court considers these opinion letters *infra*.

der the FLSA are independent of the collective bargaining process. Thus, the Court held that the FLSA governs all employees' substantial rights under the Act, rights which cannot be waived by contract. *Barrentine,* 450 U.S. at 740, 101 S.Ct. at 1444; *see also Brooklyn Sav. Bank v. O'Neil,* 324 U.S. 697, 707, 65 S.Ct. 895, 902, 89 L.Ed. 1296 (1945) (policy considerations of the FLSA prohibit a waiver of right to minimum wage and overtime compensation.)

The plaintiffs in the present case are seeking rights explicitly encompassed by the FLSA. The complaint alleges a violation of the §§ 7 & 15(a)(2) of the FLSA because of the City's refusal to pay the proper amount of overtime for home dog-care activities. The complaint does not allege a violation of the terms of the CBA which would require the plaintiffs to submit to the grievance procedure agreed to in the contract.[12]

Last, the City argues that the plaintiffs are precluded from judgment in this case as a result of the Supreme Court's holding in *Gregory v. Ashcroft,* —— U.S. ——, 111 S.Ct. 2395, 2403, 115 L.Ed.2d 410 (1991). The City reasons that the holding in *Gregory* requires the plaintiffs to point to clear and unambiguous language in the FLSA displaying the intent of Congress to require the City to compensate them for home dog-care activities before and after work.

The court concludes, however, that *Gregory* does not require summary judgment for the City. Contrary to the City's position, the FLSA explicitly addresses law enforcement activities. *See* 29 U.S.C.

§§ 203(e)(1), (2) & 207(k). Nevertheless, the City maintains that the Portal Amendment is ambiguous in that it does not plainly refer to home dog-care activities as being covered under the FLSA. The City reasons that such ambiguity must be resolved in favor of the defendant local government employer.

The City's assertion that a plain statement is required displaying Congress' intent to include home dog-care activities under the coverage of the FLSA overlooks both the facts of the *Gregory* case and the rationale of the plain statement requirement. *Gregory* involved a challenge to the Age Discrimination in Employment Act (ADEA) as it applied to Missouri state judges. *Gregory,* 111 S.Ct. at 2398-99. The Court held that ADEA does not cover Missouri state judges reasoning that the decision by a state concerning the qualifications of its judges is one that must not be intruded upon by the federal government because it is an area of fundamental state sovereignty. *Gregory,* 111 S.Ct. at 2400-01. The Court concluded that because a plain statement of Congress' intent to regulate the states' right to determine the qualifications of their judges did not exist in the ADEA, the judges' qualifications were not governed by the Act. *Gregory,* 111 S.Ct. at 2403-04.

The instant case does not involve the sovereign right of a state to determine the qualifications of its "policy makers." This case involves the relationship between a local government employer and its employees which Congress has unambiguously regulated in the FLSA. 29 U.S.C.

---

**12.** The plaintiffs' assertion that a genuine issue of fact exists as to whether the CBA § 20 covers home dog care is merely an attempt by the plaintiffs to preclude summary judgment against them. The issue that the plaintiffs purport to raise is whether § 20, the general overtime provision of the CBA, makes the home dog care compensable by contract, custom or practice thus taking it out of the exemption of the Portal Act. 29 U.S.C. § 254(b). There is no genuine issue as to whether the home dog care is covered by contract because as the court stated in *Blum* "a contract which does not refer to and specify the activities for which compensation is to be made does not bring the exception into force." *Blum,* 418 F.2d at 285-86 n. 4.

The fact that no genuine issue exists in regards to the interpretation of the CBA simply means that the plaintiffs do not have to seek arbitration and that this court is the proper forum to hear their claim. The plaintiffs are seeking enforcement of their rights under the FLSA for activities they allege are compensable under the FLSA. *See Vadino v. A. Valey Engineers,* 903 F.2d 253, 265 (3rd Cir.1990). Indeed the plaintiff's would still have a claim under the FLSA if the provision of the CBA conflicted with the liabilities of the employer under the act. *See Saribekian v. Concrete Drilling & Sawing Co.,* No. 89 C 7902, 1990 WL 133431, at *2, 1990 U.S.Dist.LEXIS 11997, at *6 (N.D.Ill. Sept. 13, 1990).

§§ 203(e)(1), (2) & 207(k). The City's overbroad interpretation of *Gregory* would require Congress to explicitly name the type, time, and place of performance of every activity which is to be counted as hours worked under the FLSA for every category of public employee. Such a requirement would render any interpretation of the term "principal activity," as found in § 4(a)(2) of the Portal Amendment, moot. Thus, we reject the City's argument that the holding in *Gregory* requires us to find in favor of the City.

**D. Department of Labor Opinion Letters**

The DOL has addressed the compensability of home dog care by canine patrol officers in three separate opinion letters. *See* FAIR LABOR STANDARDS HANDBOOK 265, 267–68 & 241–42 (reprinting opinion letters of September 21, 1985, December 30, 1985 and June 13, 1989). The Supreme Court has established a standard for weighing the persuasive force of opinion letters and administrative guidelines. In *Skidmore v. Swift & Co.*, 323 U.S. 134, 140, 65 S.Ct. 161, 164, 89 L.Ed. 124 (1944), the Court stated, the interpretation of a statutory term by an agency charged with administering the statute "do[es] constitute a body of experience and informed knowledge which courts and litigants may properly resort to for guidance."

The opinion letters dated December 30, 1985 and June 13, 1989 refer to situations analogous to this case. These letters address home dog care by an officer dog handler who was required as a part of his duty as a dog handler to be responsible for the care, control, grooming, and exercising of the dog for 24 hours a day, including the officers regular days off and vacation periods. The DOL found such home care activity compensable because the employer knew or had reason to believe that the home dog-care activities were taking place. *See* FAIR LABOR STANDARDS HANDBOOK, at 242, 265 (letters dated June 13, 1989 and December 21, 1985) (citing 29 C.F.R. § 785.-12).

The City seeks to minimize the effect of the DOL letters finding home dog care compensable under the FLSA on the grounds that the letters are devoid of analysis and are in conflict with the DOL's earlier position in the letter dated September 21, 1985. However, it is clear to the court that the December, 1985 letter and the June, 1989 letter are both grounded in the regulations as promulgated by the DOL. The City's assertion that the two later opinions are in conflict with the DOL's earlier position is based on the September 21, 1985 letter which held that an officer in the K–9 Corps who *voluntarily* takes care of a dog during off-duty hours is not entitled to compensation where the off-duty care is similar to that given a household pet. The September 21, 1985 letter addresses a situation that is different from the December, 1985 letter, the June, 1989 letter, and the situation in this case. This case and the two later DOL letters involve a situation in which the dog handlers were required to board, exercise, and maintain the dogs as part of their jobs as canine handlers. The September 21, 1985 letter addressed a situation where the officer/handler was *not required* to board and care for the dogs for 24 hours per day. The situation addressed in the September, 1985 letter involved an officer that had volunteered to board the dog after he had become a canine officer. The December, 1985 letter and the June, 1989 letter are not inconsistent with the September, 1985 letter; thus these letters serve us guidance for this court in the determination of this case. The court finds the December, 1985 and June, 1989 letters to be the better reasoned result. Like the decision in *Truslow*, these letters support a denial of summary judgment in favor of the City.

**II. CONCLUSION**

For the reasons set forth above, the City's motion for summary judgment is DENIED.